IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil No. 4:23-cv-441 |
| Plaintiff, ) | |
| ) | |
| v. ) | VERIFIED COMPLAINT FOR |
| ) | FORFEITURE IN REM |
| 18,469.307445 TETHER VALUED ) | |
| VALUED AT APPROXIMATELY ) | |
| $18,469.31, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action to forfeit specific property, described as approximately 18,469.307445 Tether seized on July 14, 2023 (hereinafter the "Defendant Property") to the use and benefit of the United States of America for its involvement in wire fraud under 18 U.S.C. § 1343 and for its involvement in money laundering under 18 U.S.C. §§ 1956 and 1957.

2. It is believed that evidence will show, or will after a reasonable opportunity for further investigation and discovery, that the Defendant Property is forfeitable under federal law as set forth herein.

3. The United States believes the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as personal property constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud), which

1

is a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

4. The United States believes the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property.

## II.   DEFENDANT IN REM

5. The Defendant Property consists of 18,469.307445 Tether (hereinafter "USDT") valued at approximately $18,469.31, which was seized pursuant to a federal seizure warrant on approximately July 14, 2023. Plaintiff notes the value of the Defendant Property fluctuates, and at any given time may be more or less than that set forth above.

## III.   JURISDICTION AND VENUE

6. This Court has jurisdiction over this case, pursuant to 28 U.S.C. § 1345 (United States as plaintiff), as an action commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

7. This Court has in rem jurisdiction and venue over the Defendant Property under 28 U.S.C. § 1355(b) and § 1395(b) as acts or omissions giving rise to the forfeiture occurred in this district.

## IV.   FACTS

8. This matter involves virtual currency and a scheme to defraud the victim of approximately $99,000.

9. Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional "fiat currency."

10. Fiat currency is government-issued currency or money that is not backed by a physical commodity, such as gold or silver, but is backed by the government that issues it. The value of fiat currency is, in part, derived from the stability of the issuing government rather than the worth of a commodity backing it. Most modern paper currencies are fiat currencies including the U.S. dollar, the Euro, and other major global currencies.

11. Virtual currencies are not issued by any government or bank like traditional fiat currencies, but are generated and controlled through computer software. Bitcoin (hereinafter "BTC") is currently one of the most popular virtual currencies in use.

12. Virtual currency is a digital representation of value that functions as (i) a medium of exchange; (ii) a unit of account; and/or (iii) a store of value.

13. Virtual currency addresses are the digital locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

14. Binance Holdings Ltd., branded Binance, is a global company that operates the largest exchange in terms of daily trading volume of virtual currencies or "cryptocurrencies."

15. CryptoFi is a digital bank platform that allows its users to buy, sell, and hold cryptocurrency with their bank or credit union.

16. Paxful is an internet platform that allows its users to buy, sell, trade, and store cryptocurrency such as BTC and USDT.

17. Virtual currency exchanges, like Binance, are trading and/or storage platforms for virtual currencies such as BTC. Many exchanges also store their customers' virtual currency in virtual currency accounts. These virtual currency accounts are commonly referred to as "wallets" and can hold multiple virtual currency addresses.

18. A digital currency wallet is a software application (or other mechanism) that provides a means for holding, storing, and transferring digital currency. A wallet holds the user's digital currency addresses, which allow the user to receive digital currency, and private keys, which allow the user to transfer digital currency. The wallet also maintains the user's digital currency balance. A wallet provider is a person (individual or entity) that provides the software to create and manage wallets which users can download. A hosted wallet provider is a business that creates and stores a digital currency wallet on behalf of a customer. Most hosted wallets also offer exchange and payment services to facilitate participation in a digital currency system by users.

19. Many virtual currencies, including BTC, publicly record all their transactions on what is known as a "blockchain."

20. A blockchain is a distributed public ledger containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and records every virtual currency address that has ever received that specific virtual currency and maintains records of every transaction and all the known balances for each virtual currency address.

21. There are different blockchains for different types of virtual currencies.

22. Blockchain explorers are online tools that operate as a blockchain search engine allowing users the ability to search for and review transactional data for any addresses on a particular blockchain. The blockchain explorer uses a database to arrange and present the data to a user in a searchable format.

23. While the identity of a virtual currency address owner is generally anonymous, law enforcement can identify the owner of a particular virtual currency address by analyzing a blockchain. The analysis can also reveal additional addresses controlled by the same individual or entity.

24. Over the course of this investigation, the Federal Bureau of Investigation (hereinafter the "FBI") conducted detailed blockchain analyses to investigate virtual currency transactions associated with the fraud scheme from which the Defendant Property was derived.

25. On or about February 22, 2023, a female residing in Knoxville, Iowa (hereinafter "Victim # 1"), then 63 years old, opened an email on her iPad that claimed

it had been compromised by an unknown person and that she needed to contact the person who sent the email for assistance.

26. Victim #1 called the phone number provided, (XXX) XXX-2608, and spoke with "Mark" (hereinafter "Fraudster # 1"), who falsely claimed to be with the U.S. Department of the Treasury.

27. Fraudster # 1 told a false story to Victim # 1, namely that her iPad had been hacked by someone in Russia or China and now had pornography on it, which could get her in trouble.

28. Fraudster # 1 claimed Victim # 1 needed to send $10,000 to him on Walmart and Dollar General gift cards for the purpose of covering expenses that would be incurred to fix the iPad and to locate the hacker or hackers.

29. On February 22, 2023, Victim # 1 purchased $12,100.11 in Walmart and Dollar General gift cards and provided Fraudster # 1 with the account numbers on all the gift cards.

30. On March 29, 2023, Victim # 1 was contacted by "Steve" (hereinafter "Fraudster # 2"), who falsely claimed to be an employee of Apple.

31. Fraudster # 2 convinced Victim # 1 to withdraw $150,000 from her retirement account to purchase Bitcoin from CryptoFi, a cryptocurrency financial technology service company.

32. Fraudster # 2 persuaded Victim # 1 to download an application to her cell phone that allowed Fraudster # 2 access to Victim # 1's cell phone.

33. When Victim # 1 opened an account with CryptoFi using her cell phone, Fraudster # 2 appeared to be monitoring it because Fraudster # 2 would correct Victim # 1 when she would make a typographical error or enter something incorrectly when she was accessing the account.

34. On March 30, 2023, Fraudster # 2 manipulated Victim # 1 and persuaded her to go to her bank and wire transfer $99,000 to CryptoFi.

35. Fraudster # 2 had Victim # 1 keep him on the telephone when she conducted this transaction.

36. While Victim # 1 was conducting the $99,000 wire transfer, bank employees tried to convince her she was being scammed, but they could not dissuade her from making the transfer.

37. On March 30, 2023, Victim # 1 used the $99,000 in her newly opened crypto account, minus a $9,890.10 transaction fee, to purchase 3.00598 BTC.

38. CryptoFi records pertinent to this matter obtained by law enforcement show that on March 30, 2023, time stamp 5:37:36 PM, Victim # 1's CryptoFi account sent 3.00598 BTC to the following address:

> 18dadz3hy7PSvuQRY7nhz7yPgDN76rZ8aR

39. On March 30, 2023, time stamp 5:40:37 PM, the 3.00598 BTC was sent to another deposit address held at Paxful, a peer-to-peer cryptocurrency exchange, described as follows:

> 3HrTJzuUUTtxxWjmBcJmeK12EHgajCopkg

40. Paxful was asked by the FBI to voluntarily provide account and ownership information associated with the Paxful deposit address and transaction hash listed above.

41. The Paxful account associated with the above address was identified as Paxful User ID 3488717 (hereinafter described as "Paxful Account"). Paxful customer records obtained by law enforcement identify the Paxful Account owner as Sachin, and provided his date of birth (February 17, 2000), username (okjackjk), email address (jackjk129056@gmail.com), India identification card number (435098578971), and address (Son of Anil Kumar, Block-4/223, Trilok Puri, East Delhi, Delhi – 110091).

42. Paxful records show that on March 30, 2023, time stamp 43:26+00:00, Paxful Account received the equivalent of a $83,738.40 deposit at deposit address 3HrTJzuUUTtxxWjmBcJmeK12EHgajCopkg. This deposit had the following transaction hash value:

f4ad9c60c446f812539a83e52bedbcb02461330de1902a260a3ec6cb59c3457d.

43. Paxful records show that on March 30, 2023, time stamp 48:49+00:00, the Paxful Account sent the equivalent of $83,763.65 to another destination address:

1M4Dsr8sZ7uH11zeoTXGYWTam5K6zuMRsu

Paxful records show no funds remained in the account after April 5, 2023.

44. Further analysis of the blockchain determined that address 1M4Dsr8sZ7uH11zeoTXGYWTam5K6zuMRsu was associated with the visual asset service provider ("VASP") Binance.com.

45. The Binance account associated with the above address is identified as Binance User ID 403581012.

46. Binance customer records identify the owner of Binance User ID 403581012 as Vishal Gautam (hereinafter "Gautam"), as well as his date of birth (February 21, 2002), his email address (saching129056@gmail.com), his India identification card number (679985212558), and his address (Child of Anil Kumar, House No-85, Block No-2, Trilok Puri, Patparganj, East, Delhi, Delhi – 110091).

47. On approximately April 4, 2023, Fraudster # 2 convinced Victim # 1 to return to her bank and make another wife transfer, this time of $50,000, to CryptoFi for the purchase of additional BTC.

48. Victim # 1's bank refused to make the $50,000 wire transfer and eventually convinced Victim # 1 she was the victim of a fraud scheme.

49. On or about July 17, 2023, the FBI obtained a seizure warrant in the U.S. District Court for the Southern District of Iowa for Binance User ID 403581012 based on a judicial determination that there was probable cause to believe the funds in Binance User ID 403581012 were subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on grounds the funds were derived from proceeds traceable to a violation of 18 U.S.C. § 1343, the federal wire fraud statute.

50. The FBI initiated an attempted administrative forfeiture for the funds seized from Binance User ID 403581012 specifically valued at approximately $18,469.31.

51. On or about September 22, 2023, Gautam filed a petition with the FBI, contesting the attempted administrative forfeiture of the Defendant Property.

52. In Gautam's petition, he provided the following when asked to explain why he had an interest in the Defendant Property as an owner or lienholder:

> Hello Sir/Ma'am, My name is Vishal Gautam, I live in India, I am a part-time crypto Investor and trader and a full-time Health Insurance worker in my country, I have been a crypto Investor and trader for four years now, In the month of July 2023 suddenly my crypto from Binance got disappeared, I don't know how it happened but then I got to know that the FBI has put hold on my assets, It's been 3 months now since I have this hold on my assets, I request you to please release my assets from your custody, I have had these assets in my Binance account for the last 1.5 year, I am not into something illegal and never will be, I will not do any such thing that can harm your country or your people in any manner, I am a hard worker and run a family of 4 here in India, The funds which you have on hold that is a very big amount of money for me and my family, I request you to please release it from your custody. Thank You & Regards

53. The foregoing statement by Gautam is false or inaccurate insofar as the Defendant Property was not in anyone's crypto account for 1.5 years prior to September 22, 2023, or even 1.5 years prior to the date it was seized, which was July 17, 2023.

54. Gautam also claimed the Defendant Property was "money for me and my family."

55. Gautam provided no documentation showing he allegedly funded the account from which the Defendant Property was seized with legitimate funds.

## V.   COUNT ONE
## FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(C)

56. Plaintiff repeats and realleges each and every allegation set forth above.

57. The United States has reason to believe the Defendant Property is personal property which constitutes and is derived from proceeds traceable to a violation of a specified unlawful activity under 18 U.S.C. §§ 1956(c)(7) and 1961(1), specifically wire fraud, under 18 U.S.C. § 1343.

58. As a result of the foregoing, the Defendant Property is forfeitable to the United States under 18 U.S.C. § 981(a)(1)(C).

## VI.   COUNT TWO
## FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(A)

59. Plaintiff repeats and realleges each and every allegation set forth above.

60. The United States has reason to believe the Defendant Property constitutes personal property involved in a transaction and attempted transaction in violation of 18 U.S.C. § 1956 and § 1957, and any property traceable to such property.

61. As a result of the foregoing, the Defendant Property is forfeitable to the United States under 18 U.S.C. § 981(a)(1)(A).

## VII.   CONCLUSION

WHEREFORE, the Plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant Property, that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant Property be forfeited to the United States, and that

it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

                Respectfully submitted,

                Richard D. Westphal
                United States Attorney

                By: */Craig Peyton Gaumer*
                Craig Peyton Gaumer
                Assistant United States Attorney
                U. S. Courthouse Annex,
                Suite 286
                110 East Court Avenue
                Des Moines, Iowa 50309
                Tel: (515) 473-9300
                Fax: (515) 473-9292
                Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Matthew R. Thatcher, hereby verify and declare under penalty of perjury that I am a Special Agent of the Federal Bureau of Investigation, and that I have read the foregoing Verified Complaint *in Rem, United States v. 18,469.307445 Tether, Valued At Approximately $18,469.31* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

Dated: November 8, 2023.

_____
Matthew R. Thatcher, Special Agent,
Federal Bureau of Investigation